SAMUEL JOHNSON,

        Plaintiff,

-vs-                                                  Case No. 6:08-cv-661-Orl-19DAB

AARON RENTS, INC.,
d/b/a Aaron's Sales & Lease Ownership,

        Defendant.
_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment and Incorporated Memorandum of Law by Defendant Aaron Rents, Inc., d/b/a Aaron's Sales & Lease Ownership, (Doc. No. 36, filed June 1, 2009); and

2. Response to Defendant's Motion for Summary Judgment by Plaintiff Samuel Johnson, (Doc. No. 41, filed July 7, 2009).

## Background

### I.    Undisputed Facts

Plaintiff Samuel Johnson was employed by Defendant Aaron Rents, Inc., d/b/a Aaron's Sales & Lease Ownership, from October of 2006 to January of 2008. (Doc. No. 36-2 at 2; Doc. No. 36-4 at 12, 59.) Defendant is a corporation that manufactures, sells, and rents furniture. (Doc. No. 36-2 at 2.) While Plaintiff was employed with Defendant, he worked as a product technician, and his primary job responsibilities were to deliver, assemble, and pick up Defendant's furniture. (*Id.*; Doc. No. 36-4 at 17.) At the beginning of his employment, Plaintiff worked four days a week, Monday

through Thursday, and his shift ran from approximately 9 or 10 a.m. to 7 or 8 p.m. (Doc. No. 36-2 at 2; Doc. No. 36-4 at 16.) After about six months, he began working five days a week, Monday through Friday. (Doc. No. 36-2 at 2; Doc. No. 36-4 at 25.)

All of Defendant's hourly employees, including Plaintiff, were required to log into a computer each day to "clock in" when they began work and "clock out" when they ended work. (Doc. No. 36-2 at 2; Doc. No. 36-4 at 33-34.) If employees were unable to clock in or clock out, they were supposed to inform their supervisor so that the supervisor could manually enter the relevant times. (Doc. No. 36-2 at 2-3; Doc. No. 36-4 at 33-34.) The computer stored the clock in and clock out times, and each week, the employee and his or her supervisor would review and sign a printed copy of the time sheet indicating that it was correct. (Doc. No. 36-2 at 3, 10-13; Doc. No. 36-4 at 36, 46-48.) The signed sheets were then faxed to Defendant's corporate offices. (Doc. No. 36-2 at 3; Doc. No. 36-4 at 46-47.)

## II. Contentions of the Parties

Plaintiff asserts that from approximately August of 2007 until his termination in January of 2008, he "was not paid overtime compensation for all hours worked over 40 hours per week." (Doc. No. 15-2 at 1-2.) He states that he verbally complained about this uncompensated work "on various occasions" throughout his employment. (*Id.* at 2.) Specifically, Plaintiff claims to have complained to his direct supervisor, John Cordell, on numerous occasions. (Doc. No. 36-4 at 30, 49-51, 59, 71-72.) According to Plaintiff, Mr. Cordell would just "blow him off" and tell him that they would fix it later. (*Id.*)

Plaintiff states that he was not properly compensated for overtime work because Defendant's timekeeping system did not accurately reflect the hours that Plaintiff actually worked. (*Id.* at 35.)

He did not receive proper time credit when he worked through lunch or when he worked after hours. (*Id.* at 29-30, 52.) Plaintiff alleges that the time records were never corrected, even after he informed Mr. Cordell of the problem. (*Id.* at 30, 49-51, 57, 59, 71-72.)

Defendant denies that Plaintiff ever complained to Mr. Cordell about the inaccuracy of the time records. (Doc. No. 36-2 at 3-4.) According to Defendant, the time records are based on information provided by Plaintiff, (*id.* at 2-3); therefore, any inaccuracy is a result of Plaintiff's misinformation and not Defendant's error.

Plaintiff brought this action against Defendant on April 24, 2008, alleging a violation of the overtime compensation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 215(a)(2) (2006). (Doc. No. 1.) Defendant answered the Complaint, denying Plaintiff's entitlement to relief. (Doc. No. 9, filed May 21, 2008.) Defendant now moves for summary judgment, and Plaintiff has responded in opposition to this Motion. (Doc. Nos. 36, 39.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**Analysis**

Under the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate. *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). As explained by the Eleventh Circuit:

> A person is employed if he or she is suffered or permitted to work. It is not relevant that the employer did not ask the employee to do the work. The reason that the

> employee performed the work is also not relevant. If the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.

*Id.* (citations, brackets, and quotation marks omitted).

A non-exempt employee who is denied overtime pay may bring an action against his employer to recover this unpaid compensation. *Id.* § 216(b). In such action, the employee bears the burden of proving that he "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Normally an employee may "easily discharge his burden" by securing and producing the relevant employment records from the employer. *Id.* at 687. However, when the employer's records are inaccurate or inadequate, an employee has carried out his or her burden when the employee "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Upon this showing, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

In the instant case, Defendant argues that summary judgment should be granted "because the undisputed material facts prove that Plaintiff cannot meet his burden of proving by a preponderance of the evidence that he performed work for which he was not properly compensated." (Doc. No. 36 at 1.) First, Defendant asserts that "Plaintiff cannot prove that Defendant's records are inaccurate or inadequate." (*Id.* at 11.) Secondly, Defendant contends, "Plaintiff cannot articulate, much less prove, when and how much uncompensated time he worked . . . as a matter of just and reasonable

inference." (*Id.* at 13.) Finally, according to Defendant, Plaintiff "cannot present any evidence to prove that Defendant was aware of his off-the-clock work." (*Id.* at 16.)

In response, Plaintiff states that Defendant is attempting to improperly shift the burden of accurate record keeping onto Plaintiff. (Doc. No. 41 at 1.) Plaintiff argues, "Defendant has lost sight of the fact that on a motion for summary judgment, it is the Defendant's obligation to prove that its records are accurate versus the Plaintiff needing to prove they are inaccurate." (*Id.* at 5.) Lastly, Plaintiff claims that he can prove that he performed work for which he was not compensated and argues that he should not be penalized for his inability to prove the precise amount of overtime work that he performed. (*Id.* at 6.)

Defendant is correct that Plaintiff bears the ultimate burden of proof at trial. *E.g.*, *Allen*, 495 F.3d at 1315. However, at this stage of the litigation, Defendant bears the initial burden to demonstrate that summary judgment is appropriate. *Id.* at 1313-14 (citations omitted). To meet this burden, Defendant must show that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. *Id.* (citations omitted).

The primary dispute between the parties concerns the accuracy of Defendant's records of the amount of work performed by Plaintiff. One of Plaintiff's contentions is that these records do not give Plaintiff full credit for the times that he worked through his lunch break. (Doc. No. 36-4 at 29-30.) Defendant, on the other hand, argues that Plaintiff did not follow Defendant's policy on lunch breaks and failed to properly record his time. (Doc. No. 36-2 at 3-7.) To support this argument, Defendant offers a copy of its lunch break policy which requires all hourly associates working in excess of six hours a day to take at least a thirty-minute lunch break. (*Id.* at 9.) The policy warns

associates that the refusal or failure to take regular lunch breaks will result in disciplinary action. (*Id.*) It continues:

> All associates are responsible for clocking out for lunch. Those associates that are unable to clock out for lunch will automatically have thirty (30) minutes deducted from their hours for the lunch break. If no lunch is taken, it is the associate's responsibility to inform their supervisor in writing (dated and signed) that no lunch was taken. The supervisor will correct the hours on the associate's time sheet.

(*Id.*) Accordingly, Defendant argues, Plaintiff's failure to follow Defendant's policy on lunch breaks precludes Plaintiff's requested relief. (Doc. No. 36 at 12.)

Defendant's argument concerning its lunch break policy has a flaw: Plaintiff's failure to follow this policy is only relevant if Plaintiff had notice of it. Defendant has not offered evidence that Plaintiff ever was informed about, received, or signed this policy. In fact, when asked during his deposition whether he received any written statements of policy from Defendant concerning compensation or limitations on hours of work, Plaintiff stated that he had not.[1] (Doc. No. 36-4 at 23-24, 45.)

Moreover, Plaintiff's understanding of Defendant's lunch break policy appears to be somewhat different than the policy provided by Defendant. During his deposition, Plaintiff explained that it was his understanding that an employee could take a one-hour lunch break but that he usually took only a thirty-minute lunch break. (*Id.* at 28-29.) Furthermore, when there was a lot of work to do, Plaintiff would not take any break for lunch but would work straight through his shift. (*Id.* at 29.) He could not recall how many times this happened but thought it was ten times or more. (*Id.* at 29-30.) When asked if he complained to anyone, Plaintiff responded that he complained to

---

[1] Plaintiff explained that he remembered reviewing and signing a new hire packet, but the information contained in this packed concerned the dress code, workers' compensation, insurance, and the company's 401k plan. (Doc. No. 36-4 at 23-24.)

-7-

his direct supervisor, John Cordell. (*Id.* at 30.) In response, Mr. Cordell would tell Plaintiff not to worry about it; they would figure things out later. (*Id.*) According to Plaintiff, Defendant never corrected Plaintiff's time sheets to accurately reflect his time worked over lunch. (*Id.* at 57, 72.) Thus, Plaintiff's sworn deposition testimony raises factual issues as to whether the records provided by Defendant are accurate as to the hours actually worked by Plaintiff, specifically with respect to Plaintiff's lunch breaks, and whether Plaintiff in fact complained to Mr. Cordell, thus providing notice to Defendant of the uncompensated work.

Next, Plaintiff argues that Defendant's records do not reflect his actual clock out times. (*Id.* at 52.) In response, Defendant again blames any inaccuracy in its records on Plaintiff's failure to follow Defendant's time sheet policy. (Doc. No. 36-2 at 3-7.) This policy requires associates to review and sign their time sheet each week and states that it is "the associate's responsibility to notify their supervisor if their time is incorrect." (*Id.* at 9.) Additionally, copies of the time sheets are to be faxed to Defendant's corporate office. (*Id.*)

Despite this policy, Defendant was able to locate only four of Plaintiff's signed time sheets. (Doc. No. 36-2 at 3, 10-13; Doc. No. 36-4 at 64.) Plaintiff offered an explanation for Defendant's lack of signed time sheets during his deposition when he testified that he would not sign the time sheets when he disagreed with the hours reported. (Doc. No. 36-4 at 47.) He stated that this happened more than ten times. (*Id.*) A jury could reasonably conclude from Defendant's failure to produce all of Plaintiff's time sheets that Plaintiff refused to sign the ones that he disagreed with and, in this way, put Defendant on notice that he disputed the accuracy of Defendant's records.

In addition, Plaintiff argues that his supervisors improperly recorded his clock in and clock out times in the timekeeping computer system. (*Id.* at 35, 52.) Defendant asserts that its records are

based solely on the hours reported by Plaintiff and has filed a copy of the computer clock in and clock out records for Plaintiff from July 30, 2007 to January 4, 2008. (Doc. No. 36-2 at 14-37.) These records show that Defendant paid Plaintiff for overtime work on several occasions. (*Id.*)

To corroborate the accuracy of its time records, Defendant has supplied the statement of Mr. Cordell who served as Plaintiff's direct supervisor until December 14, 2007. (*Id.* at 2.) Mr. Cordell states under oath that whenever Plaintiff was unable to clock out at night or used the timekeeping computer program improperly, Mr. Cordell would manually enter the correct information as provided to him by Plaintiff. (*Id.* at 2-3.) He further explains that Plaintiff never informed him that the hours of work reflected on Plaintiff's time sheets were incorrect. (*Id.* at 3-4.)

In contrast to Mr. Cordell's statements, Plaintiff testified during his deposition that Defendant's computer records were inaccurate and failed to report all the overtime that he worked. (Doc. No. 36-4 at 35.) Plaintiff further stated that he would complain to Mr. Cordell when the clock in and clock out times were incorrect. (*Id.* at 49-51, 59, 71-72.) Mr. Cordell would always tell him that they would fix it later, but Plaintiff's recorded working time was never corrected. (*Id.* at 57, 72.) Thus, Plaintiff's sworn testimony directly conflicts with Mr. Cordell's sworn statement concerning Plaintiff's notice to Defendant of incorrect time records and unpaid overtime work. This raises a genuine issue of material fact about the accuracy of Defendant's records and its notice of Plaintiff's unpaid overtime.

Additionally, Plaintiff has provided evidence which may support a just and reasonable inference that he performed work for which he was not properly compensated. For instance, he stated that on quite a few occasions he worked late on deliveries or pick-ups and would return to Defendant's facility after hours. (*Id.* at 33, 52.) He estimates this happened about once a week

towards the end of his employment.² (*Id.* at 40.) When he returned after hours, the facility would be locked, and Defendant did not have keys enabling him to enter the facility to access the timekeeping computer. (*Id.* at 37, 52.) Therefore, he would deposit the truck keys in the night drop box and leave without personally clocking out. (*Id.* at 33, 39, 52.) The following morning, Plaintiff would tell Mr. Cordell the time at which he finished working, and Mr. Cordell would manually input this information into the computer. (*Id.* at 33, 52.) Plaintiff testified that there were times when he would tell Mr. Cordell what time he returned, but Mr. Cordell would enter an earlier time. (*Id.* at 52.) When asked why Mr. Cordell would do this, Plaintiff replied, "Because of overtime. They didn't want us to go past 40 hours." (*Id.* at 53.)

When Mr. Cordell transferred stores in approximately December of 2007, Plaintiff explained that things actually got worse, and the time records were even more inaccurate. (*Id.* at 56-57.) The management would more frequently send him out at the end of the day, causing him to work after hours. (*Id.* at 57-58.) This continued until Plaintiff's termination in January of 2008. (*Id.* at 59.) In total, Plaintiff estimates that he is owed approximately $1,600 in unpaid overtime compensation. (*Id.* at 68-69.) Because on summary judgment the Court must view the record in the light most favorable to Plaintiff and draw all reasonable inferences in favor of Plaintiff, this sworn deposition testimony raises genuine issues of material fact which preclude summary judgment.

Defendant asks this Court to reject Plaintiff's claims because he is unable to state with particularity the exact amount of overtime that he worked for which he was not properly compensated. (Doc. No. 36 at 13-16.) An FLSA claim will not fail, however, because of a

---

² Plaintiff explained that he was required to keep a daily route sheet which would accurately reflect his evening return times. (Doc. No. 36-4 at 40.) These route sheets have not been offered as evidence in the record.

plaintiff's lack of certainty as to hours worked or as to the dates on which the plaintiff worked those hours. *Allen*, 495 F.3d at 1317. Rather, these uncertainties are the types of issues that the defendant "should test through cross-examination at trial and allow the jury to weigh in determining the credibility of [the] plaintiff's testimony in support of his or her claims." *Id.*

Defendant also asks the Court to disregard Plaintiff's "self-serving" and "uncorroborated" deposition testimony. (Doc. No. 36 at 14, 16.) It is a fundamental tenant of summary judgment review that a court may not weigh the evidence or make determinations of credibility. *E.g.*, *Hairston*, 9 F.3d at 919. The Court may not refuse to consider sworn testimony merely because it is given by an interested party. *See, e.g.*, *Allen*, 495 F.3d at 1316 ("Plaintiffs' deposition testimony calls into question the [defendant's] records."); *Posada v. James Cello, Inc.*, 135 F. App'x 250, 251-52 (11th Cir. 2005). Therefore, Defendant's argument must be rejected.

In conclusion, Defendant has failed to demonstrate that the evidence in this case presents no genuine issues of material fact. Instead, the record reveals evidence, in the form of Plaintiff's sworn deposition testimony, which is sufficient to support a reasonable inference that Plaintiff performed work for which he was not properly compensated. Because the Court may not consider the credibility of Plaintiff's testimony on summary judgment, Defendant's Motion must be denied.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment and Incorporated Memorandum of Law by Defendant Aaron Rents, Inc., d/b/a Aaron's Sales & Lease Ownership, (Doc. No. 36, filed June 1, 2009), is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 5, 2009.

*Patricia C. Fawsett*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record